UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Nº 02 Civ. 3770 (RJS)

---

LENA HILL,

Plaintiff,

VERSUS

CAROLE RAYBOY-BRAUESTEIN, DR. DAVID HART, CAROLE NELSON, PARMANAND PERSAUD, MARGARET REFEN, BELLEVUE HOSPITAL AND HEALTH CORPORATION, CITY OF NEW YORK AND HEALTH & HOSPITAL CORPORATION,

Defendants.

---

MEMORANDUM AND ORDER
January 24, 2008

---

RICHARD J. SULLIVAN, District Judge:

Plaintiff Lena Hill filed this action alleging discrimination by various defendants, including her employer, Bellevue Hospital & Health Corporation, as well as the City of New York Health & Hospital Corporation, and her co-workers and supervisors Carol Rayboy-Brauestein ("Raboy-Braunstein")[1], Dr. David Hart, Carole Nelson, Parmanand Persaud, and Margaret Refen. The Honorable Kenneth M. Karas, District Judge, then presiding, granted summary judgment to the individual defendants on all counts and to the institutional defendants on all but one count. *See Hill v. Rayboy-Brauestein*, 467 F. Supp.

---

[1] Defendant Rayboy-Brauestein's name is misspelled in the Complaint and was therefore misspelled on the docket and in the caption for this action. Because memoranda signed by the Defendant herself use "Carole Raboy-Braunstein," the Court will adopt that spelling of the Defendant's name.

2d 336 (S.D.N.Y. 2006). The remaining institutional defendants ("Defendants") thereafter filed a supplemental motion for summary judgment on the remaining count. On September 4, 2007, the case was reassigned to the undersigned. For the reasons herein, the supplemental motion for summary judgment is GRANTED.

I. Background

A. Facts

The background of this litigation is extensively detailed in Judge Karas' opinion, *see Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d at 345-48, and the parties' familiarity with the facts is presumed. Nevertheless, the facts relevant to the supplemental motion for summary judgment are provided herein. Plaintiff, an African-American woman, has been an employee of New York City for more than 19 years. On April 17, 2000, Plaintiff was transferred from Gouvenour Hospital to Defendant Bellevue Hospital & Health Corporation ("Bellevue"), as her division at Gouvenour Hospital closed. A few years prior to her transfer, Plaintiff filed a discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against the New York City Health and Hospital Corporation stemming from her employment at Gouvenour Hospital. *See Hill v. N.Y. City Health & Hosp. Corp.*, No. 96 Civ. 9601 (S.D.N.Y., filed Dec. 20, 1996). That action was settled in April 2000. Plaintiff began working at Bellevue on May 13, 2000, and she was assigned to the Pediatric Laboratory in the Pathology Department. Plaintiff alleges that upon her transfer to Bellevue, she was questioned about the settlement in her previous case, and that, despite her preference for an assignment to the General Hematology Laboratory, she was instead assigned to the Pediatric Laboratory.

Plaintiff alleges that this placement in the Pediatric Laboratory was unlawful retaliation for her protected Title VII activity.

B. Procedural History

On May 16, 2002, Plaintiff brought several causes of action, including (1) purposeful racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (2) racial discrimination, in violation of 42 U.S.C. § 1981; (3) retaliation against Plaintiff for filing a discrimination claim, in violation of Title VII; (4) emotional distress as a result of discrimination under state law; and (5) breach of contract under state law. Plaintiff further mentioned, but did not specifically plead, violations of New York Executive Law sections 296 and 297. At the conclusion of discovery, Defendants moved for summary judgment. On November 29, 2006, Judge Karas granted summary judgment with respect to all but one count, and dismissed the action against the individual defendants. *See Hill*, 467 F. Supp. 2d at 371. With respect to the one remaining claim, Judge Karas determined that Plaintiff had produced evidence, unrebutted by Defendants, that her job placement in the Pediatric Laboratory rather than in the General Hematology Laboratory may have been in retaliation for her past protected activity, in violation of Title VII. Accordingly, he denied summary judgment on that sole count. *See id.* at 367-68.

At a status conference on January 19, 2007, the remaining defendants sought and received permission to make a supplemental motion for summary judgment on the ground that an intervening change in the law had deprived them of the opportunity to present evidence with regard to the remaining retaliation claim.

## II. Discussion

### A. Permission to Supplement Motion

As an initial matter, Plaintiff contends that Judge Karas' decision to permit a supplemental motion for summary judgment was not so broad as to allow Defendants to submit additional evidence relating to the existence of a legitimate, non-retaliatory reason for Plaintiff's placement. (Tr. 32:14-16; 33:5-12.) Specifically, Plaintiff asserts that Defendants' submission of a declaration from Parmanand Persaud ("Persaud Declaration") has improperly "given defendants a second bite at the apple." (*See* Pl.'s Decl. at ¶ 11.) The Court is not persuaded by Plaintiff's argument, and reaffirms Judge Karas's decision to allow Defendants to supplement their motion with the Persaud Declaration.

At the time when the motion for summary judgment was fully submitted, the law was clear that Plaintiff's placement in the Pediatric Laboratory instead of the General Hematology Laboratory was not an adverse action under Title VII for both her discrimination and retaliation causes of action. *See Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir. 1999). Thus, because Plaintiff could not establish in her prima facie case that she was subjected to this particular adverse employment action, the burden never shifted to defendants. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) (describing burden-shifting analysis). Accordingly, defendants did not provide the Court with evidence of a legitimate business reason for this decision.

While the motion was pending, the Supreme Court made clear in *Burlington Northern & Santa Fe Railroad Company v. White*, 126 S.Ct. 2405 (2006), that events that do not constitute adverse employment actions for an alleged intentional discrimination claim may still be considered in the context of a retaliation claim. The Supreme Court held that "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 2412-13. Judge Karas considered Plaintiff's placement in the Pediatric Laboratory under the new *Burlington* standard, and determined that, for the purpose of establishing a prima facie case of retaliation, Plaintiff had met her burden. Since Defendants had not provided the Court with any evidence to rebut this assertion, Judge Karas denied summary judgment with respect to this lone count. *See Hill*, 467 F. Supp. 2d at 367-68.

Nevertheless, because Plaintiff was able to establish a prima facie case on this particular count solely as a result of the change in the law, s*ee, e.g.*, *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006) (holding that employment action that was not adverse action under pre-*Burlington* standard was adverse action under *Burlington*), Judge Karas subsequently granted Defendants' request to file a supplemental summary judgment motion to establish a legitimate non-retaliatory reason for Plaintiff's job assignment – as they presumably would have done if they could have anticipated the change in the law.

There can be no doubt that district courts have authority to permit parties to file

3

supplemental summary judgment motions, particularly when an intervening change in the law has altered the positions of the parties. *See, e.g.*, *Mendoza v. Goord*, No. 00 Civ. 0146 (GEL), 2002 WL 31654855, at *1 (S.D.N.Y. Nov. 21, 2002); *Heath v. Saddlemire*, No. 9:96-CV-1998 (FJS/RFT), 2002 WL 31242204, at *1, *6 (N.D.N.Y. Oct. 7, 2002); *see also Johnson v. State of Conn. Dep't of Corr.*, 428 F. Supp. 2d 87, 89 (D. Conn. 2006) (granting supplemental summary judgment motion), *aff'd*, 225 Fed. Appx. 42 (2d Cir. 2007). However, notwithstanding Judge Karas' decision to allow Defendants to file a supplemental motion for summary judgment, Plaintiff now argues that Defendants' filing of a supplemental affidavit in support of that motion is improper in that it (1) exceeds the scope of Judge Karas' order, and (2) unfairly prejudices Plaintiff. The Court rejects each of these arguments.

First, to the extent that Plaintiff contends that Defendants exceeded the bounds of Judge Karas' decision by supplementing their motion with a new exhibit, the Court disagrees. Although there is no transcript or written order setting forth Judge Karas' specific instructions with respect to the filing of additional affidavits in connection with the instant motion, the Court notes that the supplemental motion papers in this action were filed well in advance of the reassignment of this case from Judge Karas to the undersigned. If the supplemental motion had, in fact, been broader than contemplated by Judge Karas when he granted permission to file such a motion, or if the motion had included an impermissible exhibit, Judge Karas presumably would have notified the parties that their motion was in violation of his individual practices, which require permission prior to the filing of any motion. *See* Individual Practices of the Honorable Kenneth M. Karas, District Judge, Rule II.A. The fact that no such action was taken confirms that Defendants' supplemental motion was well within the parameters envisioned by Judge Karas.

Indeed, it is inconceivable and contrary to common sense to suggest that Defendants would be *granted* the opportunity to submit a supplemental motion for summary judgment concerning the existence of a legitimate, non-retaliatory basis for Plaintiff's transfer, only to be *denied* the opportunity to support that motion with relevant factual evidence and declarations. Such a ruling would render the granting of Defendants' request to file a supplemental motion little more than an empty gesture. As noted above, there is nothing in the record to suggest that Judge Karas intended such a result. Moreover, the Persaud Declaration, while in one sense "new," merely synthesizes and summarizes testimony and evidence already in the record and developed through the course of discovery (*see* Tr. 26:2-10). Accordingly, it can hardly be argued that the Persaud Declaration goes beyond the bounds of what would be expected of a party pursuing a motion for summary judgment.

Second, Plaintiff's contention that she will be unfairly prejudiced by the filing of Defendants' supplemental affidavit (*see* Tr. 33:11-12) is equally unfounded. In the first place, Plaintiff had ample opportunity to oppose Defendant's supplemental motion for summary judgment, and was allowed to submit affidavits and other evidence in support of that opposition. The fact that Plaintiff chose to submit only a short affidavit

in lieu of record evidence, documents, or a memorandum of law is irrelevant to the question of whether Plaintiff was given sufficient opportunity to oppose the instant motion. In addition, as noted above, the facts set forth in the Persaud Declaration are not new and cannot be fairly said to have surprised Plaintiff. With the exception of Persaud's handwritten notes of March 29, 2001, annexed as Exhibit 4 to the Persaud Declaration (*see infra* at 8 n.2), all of the exhibits annexed to the Persaud Declaration were provided to Plaintiff during discovery and were annexed to Defendants' original summary judgment motion as Defendants' Exhibits D, E, I, and P. (*See* Defs.' Reply Mem. of Law at 2 n.3; *compare* Defs.' Decl. in Supp. of Defs.' Supp. Motion for Summ. Judg. Exs. 1, 2, 3, and 5 *with* Defs.' Decl. in Supp. of Defs.' Motion for Summ. Judg. Exs. D, E, I, and P.)

Accordingly, there is no reason to disturb Judge Karas's decision to allow Defendants to supplement the summary judgment motion with a new affidavit. The Court will therefore consider the Persaud Declaration and its exhibits.

### B. Supplemental Motion for Summary Judgment on Retaliation

Defendants argue that the Persaud Declaration provides evidence of a legitimate, non-retaliatory reason for Plaintiff's job placement, and that, accordingly, summary judgment should be granted and the case closed. For the reasons cited herein, the Court agrees, and grants Defendants' motion for summary judgment on the remaining retaliation claim.

### 1. Standard of Review

Summary judgment may be granted where it is shown that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must view all evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in his or her favor. *See Tufariello v. Long Island R.R.*, 458 F.3d 80, 85 (2d Cir. 2006). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Segal v. City of New York*, 459 F.3d 207, 211 (2d Cir. 2006). "Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "The motion 'will not be defeated merely . . . on the basis of conjecture or surmise.'" *Id*. (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."). Affidavits submitted in support of or in opposition to the summary judgment motion must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). "Rule 56(e)'s requirement that

the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). "Nor is a genuine issue created merely by the presentation of assertions that are conclusory." *Id.*

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases.

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

2. Plaintiff's Retaliation Claim

Title VII forbids any employer from "discriminating against any of [its] employees . . . because he has made a charge, testified, assisted, or participated in any manner in a [Title VII] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). The Court reviews plaintiff's retaliation claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-03 (1973). *See, e.g.*, *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); *Murray v. Visiting Nurse Servs.*, No. 05 Civ. 5462 (RJS), 2007 WL 3254908, at *9-10 (S.D.N.Y. Oct. 31, 2007). Under this framework, the plaintiff must first establish a prima facie case, thus creating a presumption of retaliation. Should the plaintiff meet that burden, the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. Once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action. *See Jute*, 420 F.3d at 172.

a. Prima Facie Case

In order to present a prima facie case of retaliation under Title VII, a plaintiff must adduce

> evidence sufficient to permit a rational trier of fact to find [1] that he engaged in protected participation or opposition under Title VII, [2] that the employer was aware of this activity, [3] that the employer took adverse

action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action.

*Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d at 205-06 (quoting *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (internal quotation marks and alterations omitted)); *see also Jute*, 420 F.3d at 173; *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998).

With respect to Plaintiff's placement in the Pediatric Laboratory rather than the General Hematology Laboratory, Judge Karas concluded that Plaintiff had met her prima facie burden. *See Hill*, 467 F. Supp. 2d at 364-65. First, he held that Plaintiff had shown participation in a protected activity and that the activity was known to the defendants. *See id.* at 362. Second, he determined that Plaintiff had shown that her assignment to the Pediatric Laboratory rather than the General Hematology Laboratory was an adverse action under the new standard promulgated in *Burlington Northern and Santa Fe Railroad Company v. White*, 126 S.Ct. 2405 (2006). *See Hill*, 467 F. Supp. 2d at 363. Finally, he found that there was a causal connection between the protected activity and the adverse action because Plaintiff's allegations of retaliation were "sufficiently close in time to the complaints she made to the EEOC to support her prima facie case." *Id.* at 364.

b. A Legitimate, Non-Retaliatory Reason for the Employment Action

With the prima facie case established, the burden shifts to Defendants to present a legitimate, non-discriminatory rationale for their conduct. *See Quinn*, 159 F.3d at 768-70. Judge Karas concluded that, with respect to Plaintiff's placement in the Pediatric Laboratory instead of the General Hematology Laboratory, the institutional defendants had failed to provide any explanation for the placement. He held that, without any explanation, "the only evidence on the record supports Plaintiff's claim of retaliatory action. Thus, summary judgment on Plaintiff's claim that her placement in the Pediatric Laboratory was retaliatory must be denied." *Hill*, 467 F. Supp. 2d at 366.

After being granted leave to supplement their motion for the reasons noted above, Defendants now argue that the evidence shows that there was a legitimate, non-retaliatory reason for assigning Plaintiff to the Pediatric Laboratory as opposed to the General Hematology Laboratory. Specifically, Defendants allege that Plaintiff could not perform the functions required of a Laboratory Associate in the General Hematology Laboratory, and accordingly, was assigned to work in the Pediatric Laboratory. (*See* Defs.' Mem. of Law in Supp. of Defs.' Supp. Mot. for Summ. J. at 4, Persaud Decl. at ¶ 14.)

It is undisputed that Plaintiff transferred to Bellevue Hospital in the spring of 2000 and was assigned to the Hematology Laboratory. (*See* Defs.' Supp. Mem. at 3; Pl.'s Decl. at ¶ 7.) The Hematology Laboratory at that time was divided between the General Hematology

7

Laboratory and the Pediatric Laboratory. (Persaud Decl. at ¶ 4.) Laboratory Associates assigned to the General Hematology Laboratory performed various tests and analysis on blood and urine. (*Id.*) Laboratory Associates assigned to the Pediatric Laboratory were assigned to perform phlebotomy, which is the drawing of blood. (*Id.*)

At the time Plaintiff transferred to Bellevue, new employees and transfer employees assigned to the Hematology Laboratory were rotated through the General Hematology Laboratory and the Pediatric Laboratory. (Persaud Decl. at ¶ 6.) The purpose of the rotation was to orient employees to the two laboratories and determine their level of competence in the types of analysis performed in the labs. (*Id.*) The rotation included training in phlebotomy as well as chemical and microscopic analysis of blood and urine. (*Id.*) Plaintiff was initially staffed in the General Hematology Laboratory. (*Id.* at ¶ 7.) Like other new employees, Plaintiff was assigned various tasks and tested on her ability to complete those tasks. (*Id.*) Plaintiff was provided with six weeks of training, yet even with the training was not able to perform the basic laboratory techniques and analysis required by the General Hematology Laboratory. (*Id.* at ¶ 10; Hill Perf. Eval. of Jan. 3, 2001.) On or about June 12, 2000, Plaintiff was given three slides for evaluation, in a routine test. (*Id.* at ¶ 8.) Plaintiff failed to properly evaluate all three slides. (*Id.*; *see also* Persaud Mem. of June 12, 2000.) Six months after Plaintiff began work, she received a performance evaluation, which noted that Plaintiff "[c]annot grasp basic Hematology procedures and apply them," and that "[i]t has been difficult to train Ms. Hill in basic laboratory procedures due to gaps in fundamental lab techniques." (Hill Perf. Eval. of Jan. 3, 2001 at 0292 and 0294.) As a result of Ms. Hill's poor evaluation, she was provided with two additional weeks of training. (*Id.* at 0297; Raboy-Braunstein Mem. of Jan. 3, 2001.) In or around March 28, 2001, Persaud tested Plaintiff and noted that she was unable to identify red blood cells in a urine microscope. (*See* Notes of Persaud, Mar. 28, 2001.)[2] This indicated to Persaud that, despite the additional training, Plaintiff could not perform the analysis required in the General Hematology Laboratory. (*See* Persaud Decl. at ¶ 12.)

Finally, on April 2, 2001, Plaintiff's one-year employment evaluation indicated that she continued to be "unable to grasp basic procedures in Hematology at a competent level of performance." (*See* Hill Perf. Eval. of Apr. 2, 2001.) Accordingly, Defendants assigned Plaintiff to the Pediatric Laboratory, instead of the General Hematology Laboratory. (*See* Persaud Decl. at ¶ 14.)

Defendants have thus satisfied their burden of production by articulating a legitimate, nondiscriminatory reason for Plaintiff's placement in the Pediatric

---

[2] Plaintiff disputes the admissibility of Persaud's Notes of March 28, 2001. (Pl.'s Decl. at ¶ 10-11.) Even if the Court concluded that the document was inadmissible — a conclusion for which Plaintiff offers no legal authority — Defendants would nevertheless have succeeded in establishing a legitimate, nondiscriminatory reason for placing Plaintiff in the Pediatric Laboratory based on the remaining evidence establishing that Plaintiff had failed to meet the basic requirements of working on the General Hematology Laboratory.

8

Laboratory instead of the General Hematology Laboratory. *See Patterson*, 375 F.3d at 221 (observing that, under step two, the employer must satisfy its "burden of production" by "articulat[ing] some legitimate, nondiscriminatory reason for the termination supported by admissible evidence which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action") (internal quotations marks and citations omitted).

c. Pretext

The final step under the *McDonnell-Douglas* analysis requires Plaintiff to establish that retaliation was a "substantial reason" for the adverse employment action. *Jute*, 420 F.3d at 173. "A reason cannot be proved to be a pretext . . . unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (emphases and internal quotation marks omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Patterson*, 375 F.3d at 221 (internal quotations omitted). Plaintiff must "produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 717 (2d Cir. 1994) (internal quotations omitted). In meeting this evidentiary burden for the purposes of a summary judgment motion, the plaintiff must produce evidence in the record that shows that there is a genuine issue of fact. Neither conclusory assertions, s*ee Patterson*, 375 F.3d at 219; *see also Smith v. American Express Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988) (affirming summary judgment in light of plaintiff's failure to present more than conclusory and substantially unsupported assertions that employer's proffered race-neutral rationale for denial of promotion was pretext), nor contentions that the affidavits supporting the motion are not credible, s*ee Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), create a genuine issue of fact.

The Court finds that there is insufficient evidence in the record for a reasonable jury to conclude that Defendants' proffered reason for placing Plaintiff in the Pediatric Laboratory instead of the General Hematology Laboratory was a pretext for retaliation. Plaintiff first asserts that Persaud "was not in a position to make an intelligent decision whether [she] was competent to perform in General Hematology." (Pl.'s Decl. at ¶¶ 3-4.) She also alleges that the person who trained her, Margaret Refen, was not college-trained and made errors. (Pl.'s Decl. at ¶ 7.) Finally, she submits that she was not tested properly, that Persaud fabricated testing results by changing the labels on her test slides to ensure that she failed, and that, in any case, she had been told that she had performed well. (Pl.'s Decl. at ¶¶ 8-9.)

These conclusory allegations contained in Plaintiff's Declaration are not supported by any evidence in the record. General accusations that Defendants fabricated records, lied, and were incompetent, unsupported by any record evidence, cannot satisfy Plaintiff's burden. *See Patterson*, 375 F.3d at 219; *Goenaga*, 51 F.3d at 18; *Smith*, 853 F.2d at 154-55. Moreover, to the extent

that Plaintiff alleges that she was not properly trained in urinalysis and that the people performing the training and testing were not qualified (*see* Pl.'s Decl. at ¶¶ 4, 3, 7, and 8), these unsupported allegations were previously rejected by Judge Karas. *See Hill*, 467 F. Supp. 2d at 353 (concluding that there was "little evidence that Plaintiff was denied training," and that "Defendants have produced an abundance of evidence that Plaintiff received significant amounts of training in both hematology and urinalysis after she failed the test"). Judge Karas also rejected Plaintiff's unsupported allegations that Defendants lied and fabricated records. *See id.* at 366.

Aside from the unsupported and conclusory allegations in Plaintiff's affidavit, the only remaining evidence of retaliation is the temporal proximity between Plaintiff's protected activity and the placement she alleges to be retaliatory. Although Judge Karas found that this temporal proximity was sufficient to establish Plaintiff's burden in the first step of the *McDonnell Douglas* analysis, *see Hill*, 467 F. Supp. 2d at 363-64, that finding is not independently sufficient to establish that Defendant's proffered reason is pretextual. The "timing of events alone, even if sufficient to meet the plaintiff's prima facie burden, cannot defeat summary judgment in the face of defendant's proffered legitimate reason." *Reilly v. Metro-North Commuter R.R. Co.*, No. 93 Civ. 7317, 1996 WL 665620, at \*14 (S.D.N.Y. Nov. 15, 1996). Indeed, "mere temporal proximity, by itself, is insufficient to support a claim of retaliation at the summary judgment stage, at least where the defendant proffers a legitimate reason for the plaintiff's discharge with evidentiary support therefor." *Murray*, 2007 WL 3254908, at \*15 n.14 (internal quotation marks omitted); *see Vosatka v. Columbia Univ.*, No. 04 Civ. 2936 (LAP), 2005 WL 2044857, at \*10 (S.D.N.Y. Aug. 25, 2005) (holding that "close temporal proximity . . . alone, is insufficient as a matter of law to infer discrimination on the part of [defendant] once [defendant] has proffered legitimate non-discriminatory reasons" and collecting cases).

Even if the Court were to credit Plaintiff's unsupported allegations and conclusory assertions and determine that the reason for Plaintiff's placement was false, Plaintiff has nevertheless failed to make any showing that these actions were motivated by retaliation. "A reason cannot be proved to be a pretext . . . unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason." *St. Mary's Honor Center*, 509 U.S. at 515 (emphases and internal quotation marks omitted). Plaintiff has failed even to allege that retaliation was the "real reason" for her placement in the Pediatric Laboratory. Indeed, Plaintiff proffers absolutely no explanation for why Persaud and others would endeavor so vigilantly to disqualify Plaintiff from her preferred placement. There is simply no evidence for the proposition that retaliation motivated the placement of the Plaintiff in the Pediatric Laboratory rather than the General Hematology Laboratory.

Plaintiff has thus failed to provide the Court with any evidence explaining her failure to meet the standards of the General Hematology Laboratory. No reasonable fact-finder could conclude, on this record, that there is a genuine issue of fact going to whether the reason provided for Plaintiff's

placement in the Pediatric Laboratory was false. Accordingly, because the evidence as a whole is insufficient for a fact-finder to conclude that defendants' proffered reasons for placing Plaintiff in the Pediatric Laboratory were a pretext for retaliation, Plaintiff's retaliation claim is dismissed.

III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court shall enter judgment.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: January 24, 2008
   New York, New York

\* \* \*

Plaintiff Lena Hill is represented by Will Levins, Ballon, Stoll, Bader & Nadler, P.C., 1450 Broadway, 14th Floor, New York, NY 10018.

Defendants Carole Rayboy-Brauestein, Dr. David Hart, Carole Nelson, Parmanand Persaud, Margaret Refen, Bellevue Hospital and Health Corporation, City of New York, and Health & Hospital Corporation are represented by Andrez Carberry, New York City Law Department, 100 Church Street, New York, NY 10007, at argument, and Jonathan Bardavid, New York City Law Department, 100 Church Street, New York, NY 10007, on the brief.